**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:99-cv-974 |
| Plaintiff | Beckwith, J. |
| | Bowman, M.J. |
| v. | |
| RONALD E. SMITH, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

More than seventeen years ago, in 1999, the United States filed this civil case against Defendant Ronald E. Smith and several members of his family,[1] seeking to collect unpaid income tax liabilities, penalties and interest owed by Ronald E. Smith from 1982-1991, to foreclose on federal tax liens on two parcels of real property, and to set aside an allegedly fraudulent conveyance of an interest in the property made by Smith to family members. (Doc. 21). Although judgment in excess of 3.9 million dollars was entered against Mr. Smith many years ago, the United States has yet to collect more than a fraction of its judgment. Currently before the undersigned is a post-judgment motion that seeks information through which the United States may yet collect the money owed by Mr. Smith. For the reasons that follow, the post-judgment motion of the United States will be granted.

**I.    Background**

Close in time to the initiation of this civil case, Smith was prosecuted criminally for willfully failing to file income tax returns. In January 1991, Smith pleaded guilty to charges of failing to file for tax years 1983, 1984 and 1985, but his plea agreement

---

[1] Mr. Smith has continued to represent himself from the outset of this civil proceeding, although the three family members appeared through counsel.

specifically excluded "any tax liability of Mr. Smith for the tax years 1982-1989." (Doc. 21 at 2). On October 3, 1991, Smith was sentenced to two months in custody of the Bureau of Prisons and fined $100,000. (Doc. 84 at 4). Just before sentencing, he conveyed a substantial interest in his "Tylersville Road property" to relatives, all of whom were subsequently named in this civil suit. Following an evidentiary trial in the civil case, this Court found Mr. Smith's conveyance of his property interest to be fraudulent. (*See* Doc. 84 at 11, noting evidence that "Smith routinely sought to conceal his assets.").[2]

Prior to entry of judgment in this civil litigation, Mr. Smith presented arguments similar to those presented by other tax protesters, including but not limited to challenges to the authority of the United States Attorney, arguments based on Smith's alleged citizenship "only of the State of Ohio and…not…of the United States," (Doc. 21 at 3), and other challenges to the collection of any federal income taxes. Rejecting those arguments, on March 13, 2003, this Court granted partial summary judgment to the United States in the amount of $3,933,012.50 as of February 5, 2001, plus statutory interest and other additions accruing thereafter. (Doc. 84 at 2, citing Docs. 21, 26)). Subsequently, the parties consented to disposition of all remaining claims before the U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c).[3] (Doc. 45).

For reasons that are not entirely clear from the record, resolution of the remaining claims (concerning Mr. Smith's fraudulent conveyance of property) took several years. In November 2008, more than two years after a bench trial, U.S. Magistrate Judge Timothy S. Hogan granted final judgment in favor of the United

---

[2]Testimony was adduced at trial that Smith sealed bundles of $100 bills in PVC pipes for burial, and that he accumulated precious metals – coins, ingots, and jewelry – for later conversion into cash. (*See* Doc. 103-3, pp. 317:11-322:8).

[3]On May 6, 2011, upon the retirement of Judge Hogan, this case was transferred to the docket of the undersigned. (Doc. 98).

States,[4] and directed that the Tylersville Road property be foreclosed and sold to satisfy federal tax liens assessed against Mr. Smith. (Doc. 84). As a result of that sale, the United States recovered a total of $433.629.81. However, Mr. Smith has made no other payments towards the remainder of his judgment debt.

**II.     Analysis**

Notwithstanding Mr. Smith's failure to voluntarily pay any amount towards his debt, the United States has been persistent in its efforts to collect payment. On September 8, 2016, the United States served interrogatories and a request for the production of documents on Mr. Smith seeking his financial information. Mr. Smith failed to respond. The United States exhausted efforts to resolve the dispute before filing the instant motion to compel Mr. Smith to respond.

Evidence of Mr. Smith's steadfast refusal to provide the requested information appears in correspondence from Mr. Smith to the Government, which Mr. Smith filed of record on October 24, 2016. In that letter, Smith affirmatively represents that he will not provide any information based upon his "contention that the United States of America is fully capable of ascertaining this information accurately from other sources...." (Doc. 102). Smith also states that civil information has been collected in the past "and used for criminal purposes," and he does not intend to waive any "God given rights" or "constitutional rights," "privacy rights" or "any right at any time."[5] (*Id.* at 1). Mr. Smith expresses incredulity "that the U.S. Attorney believes that I am capable of determining 'fair market value,' and that I am capable of determining the 'truth' of the vague and confusing interlocking questions that have been presented." (*Id.* at 2). He contends

---

[4]Mr. Smith did not appeal either the original grant of partial summary judgment against him in 2003, or the entry of final judgment in 2008.
[5]Mr. Smith did assert his Fifth Amendment rights early in this litigation, but has not done so with respect to any of the current discovery requests.

3

that his "understanding of language is very limited, among other things, due to deconstruction, a non-isomorphic relationship of words to specific meaning, ambiguity, terms of art, political correctness, etc." (*Id.*) Therefore he "respectfully request[s] that I be protected from this unnecessary intrusion into my affairs," as well as for an extension of discovery so that he can "propound questions to the U.S. Attorney, concerning my status, the nature and cause of this action, etc." (*Id.*)

Having exhausted all extra-judicial attempts to resolve the discovery dispute, the United States filed a motion to compel post-judgment discovery from Judgment Debtor Smith on February 7, 2017. (Doc. 103).

Mr. Smith filed an untimely response to the motion to compel on March 13, 2017.[6] (Doc. 104). In his response, Mr. Smith states his belief that responding to discovery requests is "voluntary." He asserts that "[o]nce ordered to comply the defendant can answer or exercise pertinent rights as appropriate." (*Id.*) Mr. Smith's response goes on to express his intention "to submit a separate motion, concerning the normal practices and procedures being applied in this case." (*Id.*) Mr. Smith suggests that he must "guess" at the "assumptions made by the Court and/or the U.S. Attorney."

> For example if defendant is being considered as a corporation (and the interrogatories seem to indicate this),[7] then as an artificial entity, said entity would not possess any 'individual' rights, because of the privileged status of …this entity, as granted by the government. It appears that the defendant is precluded from exercising substantive…provisions, that are enshrined in the U.S. Constitution, including but not limited to inalienable rights, and other immunities.
>
> It would be very helpful if the Court could provide the information concerning the status of the defendant "sua sponte" or "suo motu," and

---

[6]Mr. Smith's response was due within 21 days of the date the motion was served, on or before March 3, 2017. *See* Local Rule 7.2(a)(2).

[7]The interrogatories evince no such thing, but are clearly directed to "Judgment Debtor Ronald Smith." (Doc. 103-1). The fact that some interrogatories seek information relating to any interests held by Mr. Smith in any business entities, including basic information such as the name and address of such entities, does not mean that the interrogatories are directed to anyone other than Mr. Smith.

4

> allow an appropriate amount of time, for the defendant to file his motion concerning this subject matter, before making a decision concerning the "Motion to Compel," submitted by the plaintiff.

(Doc. 104 at 1).

Referring to the 17+ years that this case has been "in progress," Mr. Smith suggests that additional time would be in the best interests of justice. (*Id.* at 2). If the Court denies Defendant's request to file a motion and instead grants the Government's pending motion to compel, Defendant requests "a more reasonable amount of time to respond at the Court's discretion," arguing that it is "unreasonable for the defendant to pay attorney fees for the exercise of a Constitutional and/or other substantive rights." (*Id.*) Mr. Smith also seeks a generic "protective order…to protect any information that is supplied by the defendant…." (*Id.* at 2-3). Last - in an argument that suggests that his prior criminal conviction and this civil judgment have left his tax protester views largely intact - Mr. Smith suggests that the federal government does not need to tax him or anyone else, since "it could simply print the money it needs." (*Id.* at 3).

This Court unequivocally rejects all of Mr. Smith's spurious and frivolous arguments, and will grant the Government's motion to compel Mr. Smith to respond to the outstanding discovery requests. The United States is entitled to serve post-judgment discovery in order to help collect its judgments. *See* Rule 69(a)(2), Fed. R. Civ. P.; *United States v. Conces*, 507 F.3d 1028, 1040 (6th Cir. 2007)("the scope of postjudgment discovery is very broad.").[8] Mr. Smith must answer the interrogatories under oath, and must also respond fully to the outstanding requests for production of documents.

---

[8] Under Rule 69(a)(2), post-judgment discovery is unilateral. The Judgment Debtor has no similar right to conduct discovery from his Judgment Creditor.

5

A failure to present an objection "with specificity" constitutes a waiver. *See* Rule 33(b). None of Mr. Smith's current arguments are sufficiently specific, and none constitute a valid objection to any specific interrogatory or request for production of documents. To the extent that the arguments presented in Mr. Smith's untimely response may be considered, they are rejected as frivolous. The Court also rejects Mr. Smith's construed requests for additional time in which to file a "motion…concerning the normal practices and procedures being applied in this case," or to "provide the information concerning the status of the defendant" or to allow additional time for Mr. Smith to dream up additional spurious arguments to delay collection of the long-owed debt. Considering that post-judgment discovery requests were served more than six months ago and the motion to compel has been pending a full month, Mr. Smith has had more than enough time to provide a full response.

The Court must disagree with Mr. Smith's characterization of this case as "in progress" for 17+ years. There is nothing "in progress" concerning Mr. Smith's liability to the United States for a judgment in excess of $3.9 million dollars, as his liability was determined more than fourteen years ago. Mr. Smith's only "status" in this case is that of a Judgment Debtor. Only the Government's post-judgment attempts to collect what is owed remains "in progress." Any and all continued delay in collection is clearly contrary to the interests of justice, including but not limited to the legitimate interests of the United States, the public, and this Court.

The Court also rejects as without merit Mr. Smith's assertion that he need not respond because the United States either has the information or has access to other sources to obtain the information. Likewise, his assertion that he is not competent to offer a fair market value of items he has been given or received in transactions is not a

valid objection, though it does appear to be consistent with his prior conduct in concealing currency, gold and silver. The value of a precious metal is determinable from published sources, and under Ohio law an owner is charged with knowing the value of his property. *See, e.g., Smith v. Padgett*, 32 Ohio St. 3d 344, 347, 513 N.E. 737 (1987). Mr. Smith's suggestions that the inquiries are somehow vague or unanswerable, or perhaps seeking responses from some type of corporate entity, are rejected as entirely frivolous, nonsensical, and intentional obfuscation.

In compelling Mr. Smith to respond and granting the Government's request for additional monetary sanctions under Rule 37, the undersigned notes that Mr. Smith **has not** cited any Fifth Amendment right against self-incrimination as a specific objection to responding to **any** of the identified interrogatories or requests for production. The Court finds that, in light of Mr. Smith's failure to specifically assert a Fifth Amendment right and its applicability to any specific numbered interrogatory or request for production, he has waived any such right to the extent it may exist with respect to the outstanding discovery requests. *See, generally*, *Guy v. Abdulla*, 58 F.R.D. 1, 2 (N.D. Ohio, 1973) (explaining specificity required to claim privilege against answering a particular question, and procedure if a timely objection is presented in response to a motion to compel a response under Rule 37).

In an analogous case, the Sixth Circuit firmly rejected a Judgment Debtor's vague references and/or general request for a protective order. In *United States v. Conces*, the court noted that the Judgment Debtor had not

> suggested any way in which the district court's order posed a genuine threat to his Fifth Amendment privilege against self-incrimination. To the extent that he vaguely contends that any sort of response to the Government's post-judgment discovery requests might tend to incriminate him, his "blanket assertion" of a Fifth Amendment privilege is impermissible, and he has failed to "demonstrate [a] real danger[ ] of

7

> incrimination" if he were to respond to any particular discovery request. *Brennan v. Comm'r,* 752 F.2d 187, 189 (6th Cir.1984). Moreover, the Supreme Court has explained that the Fifth Amendment protection against self-incrimination "does not extend to consequences of a noncriminal nature, such as threats of liability in civil suits." *United States v. Apfelbaum,* 445 U.S. 115, 125, 100 S.Ct. 948, 954, 63 L.Ed.2d 250 (1980). Nor may Conces properly interpose a Fifth Amendment objection to the Government's discovery effort on the ground that the Government's purportedly vague requests were designed to entrap him into committing perjury, because Conces's Fifth Amendment privilege does not "protect[ ] him against false testimony that he later might decide to give." *Apfelbaum,* 445 U.S. at 130, 100 S.Ct. at 957.

*Id.*, 507 F.3d at 1040.  In short, based upon Mr. Smith's failure to adequately or timely present any valid objection to any specific interrogatory or request for production, the Court will direct Mr. Smith to provide complete responses to all of the outstanding requests.

Having reviewed the requests, the Court is satisfied that they are relevant to the legitimate efforts of the United States to collect its debt.  As another court explained in reviewing similar requests:

> Although the scope of the discovery requests are broad, the court previously noted that " 'the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.' " *1ST Technology,* 2007 WL 5596692 at *4 (quoting *British International II,* 200 F.R.D. at 588). Additionally, nothing on the face of the requests for production and interrogatories would tend to incriminate. For example, request for production No. 14 and interrogatory 25 both ask for information concerning defendant's income tax returns.  Assertions of Fifth Amendment rights against requests for income tax returns have been denied upon a finding that production of these records is not self-incriminating. *See, e.g., Brunswick Corp.,* 638 F.2d at 110 ("On the record before us we see no way in which answers to this interrogatory [asking whether appellant filed income tax returns] would tend to incriminate").

*United States. v. Warren*, 2011 WL 3319877, at *5 (E.D.Cal. 2011).

If Mr. Smith persists in failing to respond to the discovery requests in defiance of this Order, he may be held in civil contempt, which may also subject him to

8

incarceration until and unless he purges himself of the civil contempt. *See United States v. Conces*, 507 F.3d at 1033 (affirming order finding Judgment Debtor in civil contempt for failing to respond to post-judgment discovery requests, and directing his imprisonment until such time as he purged himself of contempt).

The Government seeks an award of its expenses and attorney fees as the prevailing party in this discovery dispute. Considering the nature of this litigation and the fact that the United States has collected little of the underlying multi-million dollar judgment against Mr. Smith, the benefit of such an additional more modest award of monetary sanctions is not entirely clear to the Court. Be that as it may, the United States is entitled to an award under the rules because Mr. Smith's failure to respond was not even remotely justified. In the interests of judicial economy, the Court will set the amount of the sanction award at $500, an amount that is certainly below what the Government spent in filing its motion, but takes into account the additional time that would otherwise be expended in determining a more precise monetary sanction under Rule 37.

### III. Conclusion and Order

Accordingly, **IT IS ORDERED**:

1. The United States' Motion to Compel Judgment Debtor Ronald Smith to Produce Post Judgment Discovery Responses to its Interrogatories and Requests for Document Production (Doc. 103) is **GRANTED**;

2. Pursuant to Rule 37(a)(5)(A), the expenses of the United States in making the motion to compel are awarded in the amount of $500.00, payable on or before **April 3, 2017**;

3. All objections presented by Defendant in his response in opposition to the discovery requests are **OVERRULED**. Therefore, Judgment Debtor Ronald Smith shall fully respond to all outstanding requests (Doc. 103-1) on or before **April 3, 2017**;

4. **Any failure to comply with this Order is likely to subject Ronald Smith to additional sanctions, including but not limited to civil contempt**;

5. As considered as a separate motion (or motions) for leave to file a future motion, and/or to extend the time to respond to the outstanding requests, or to provide information concerning the "status of the defendant" (Doc. 104), Ronald Smith's response/motion is **DENIED**.

    *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge